May it please the Court, Counsel. My name is Janie Lundbad and I represent the cross-appellee Mary Hamilton. Our appeal focuses on six specific errors committed by the trial court in its final judgment in this matter. I will reserve my counter-arguments to the appellees and counter-appellants' counter-appeal for my rebuttal. It seems like nobody was happy with this order. Well, almost all of the six rulings that were appealed in our appeal are connected by the fact that the subject matter, by way of the testimony and evidence presented at trial, was objected to not by the opposing party or counsel in this matter, but by the trial court. I will go through this, but it was discussed substantially in my brief, that the trial court repeatedly made objections and interjections throughout the proceedings to prevent specifically Mary's trial counsel from presenting arguments and evidence in support of specific claims and in the allocation and reward of marital property and marital debts. The first issue outlined in the appellant's brief is the court's error in failing to categorize the minor child's birth-related expenses as The trial court referred to the horse-related expenses of the minor child as extracurricular, and that is on the record. Opposing counsel also stated that the expenses relating to the horses were extracurricular, and only objected to the relevancy of said expenses during the final trial in this matter. Once those expenses were presented, the trial court arbitrarily added the additional burden on Mary to prove that the expenses were extracurricular. The court defined extracurricular as relating to education, but not on the curriculum. It's unclear where that definition came from, but there are sites in the Two actual definitions of extracurricular. Well, even if you accept the court's definition, there was some relationship of the horse to a 4-H program of the school, wasn't there? Yes, Your Honor, that is correct. There was a relation to the 4-H program with the school. The minor child participated in competitions through the University of Illinois regarding the study of horses. Oh, I thought it was equestrian. Okay, so just like 4-H farmers, we have 4-H equestrians, and that's from the school. Right. I guess they're called apologists, but again, I'm new to this subject as well. I don't think we need to spend a whole lot of time on whether or not a horse activity such as 4-H are extracurricular. We've seen countless instances of specialized sports, and everybody considers those extracurricular. They've got a little sensitive to this, because I'm a big horse person. But, you know, I mean, extracurricular, we can move on. Now, then the question, if we do accept that it's extracurricular, of course the question is, what do you do about it? But that is a separate question. Right, and I think in the court's order, by simply saying that horses are not extracurricular activities and not actually addressing the allocation of those expenses. Well, they probably wouldn't if they don't consider extracurricular. So we want you to assume that the court erred and tell us how they should have been allocated. Exactly. I believe in the trial court, Mary's position was that those expenses should have been equally allocated between the parties. During the pendency of the proceedings, which I believe was about six years or five years, forgive me, all of those expenses fell on Mary. Of course, you have to look at the reasonableness of the expenses. I mean, whether or not she should have one horse or two horse, or, you know, what she does with, I mean, horses are an expensive hobby. Well, and the parties did testify that there was substantial thought and discussions put into whether or not the horses would even be acquired. Because they were acquired during the marriage, prior to the separation of the parties. There were significant discussions between the parties and the minor child regarding the cost of boarding the horses, the daily cost for maintenance, and the responsibility of the parties and the minor child to participate in helping maintain and upkeep the horses in order to keep those costs down. So I think any objection to the reasonableness of those expenses would be precluded because during the marriage, the parties both assented to it. But the reality is we're not really able to sit here if we determine that it was extracurricular. We don't have really the evidence to rule on it. That wasn't allowed to be put into evidence, was it, entirely? There was substantial evidence as to the debts that had been, the outstanding debts related to the horse in Mary's Exhibit 3, I believe. And substantial bills and receipts, as far as the actual monthly expenses, those would probably be on Mary's financial affidavit. But it is something that, I mean, we are asking for this, the issues that we were appealing to be remanded back to the trial court to make a determination. So you might want to move on to more critical issues since you've got a lot. Right. So one of the, or at least two of the issues revolve around dissipation. Initially, Mary filed a notice of dissipation after the first day of the final hearing. And again, I know the facts are pretty clear, but I believe that there were three full days of final hearing that spanned over two years. So, and I think there was over a year between the actual first day of hearing and the second. So Mary filed a notice of dissipation about 11 months prior to the second day of final hearing in this matter. I think she filed that because the court told her she hadn't filed one. She tried to put on some evidence, the court interjected and said, you haven't filed a petition. So she filed a petition. Do I have that right? That's correct. So there are two issues surrounding dissipation. And so the court interjected when she began to present evidence regarding the withdrawals from their retirement accounts during the pendency of the proceedings. And there was a temporary order in place that the surplus of the withdrawals after the debts were paid should be put into Donald's attorney's trust account. Donald did not do that. Mary filed multiple motions for sanctions and petitions for order to show cause. When she tried to present that evidence on the first day of hearing, that's when the court interjected and said that Mary couldn't actually present any of that evidence because she didn't have a dissipation notice on file. Which we would disagree with that. But did she have one on file or do you disagree with the court requiring that pleading? I would disagree with the court requiring that pleading. At that point, what Mary was attempting to testify to was that there was a temporary order in place and these were marital funds, marital assets that needed to be allocated. It wasn't at that point necessarily about dissipation. It was about the award of those funds over and above the funds used to pay the temporary notice. So I would disagree with that. Regardless, Mary did end up filing the notice of dissipation and included in that notice of dissipation was also substantial withdrawals made by Donald during the penitentiary party separation from his bank account above and beyond his expenditures that he presented to the court by way of his financial affidavits. The trial or the kind of standard is that the charging party just has to establish that marital funds were liquidated. Mary clearly satisfied this in presenting the demonstrative exhibits and the bank account statements, the North County bank account savings and checking account statements, showing the substantial withdrawals. Above and beyond the expenditures that Donald presented by way of his financial affidavits, Mary showed that there was substantial withdrawal. She showed that he had withdrawn over $160,000 in additional funds. When she attempted to walk the trial court through those calculations, the court interjected that it wasn't necessary, that the document said what they said, and she didn't need to go through it all. Later on in her testimony, the court added an additional verdict on her, telling her that she had to prove what those liquidated funds were spent upon. Nowhere in case law or statutory authority does it state that a party claiming dissipation must know prior to filing the notice what the funds were spent on. That actually is where the verdict transfers to the party charged with dissipation to show the court by clear and convincing evidence exactly what marital purposes he or she spent those additional unaccounted for funds upon. The next, in addition to that burden, the court also stated that a checking account or a savings account was already liquid. And so because bank accounts are already liquid, they can't be liquidated, and thus dissipation doesn't apply. Clearly that is error. There's case law specifically regarding bank accounts that were included in our brief, specifically about bank accounts that are liquidated, and above and beyond, and shown that those withdrawn funds are used for purposes relating solely to the individual and not the marriage. If the court's reasoning that a bank account can't be liquid is upheld, then we're going to dismiss the case. Basically, allow parties to commit dissipation and never be held accountable for it. And again, what I want to point out about the dissipation, the dissipation of payment of marriage in regards to those bank accounts and the unexplained withdrawals is that those objections, those objections to her claim, those objections to her presenting evidence and her providing testimony in support of that evidence, those do not come from opposing counsel. The court interjected as if a party to these proceedings to prevent Mary from continuing to testify and prevent the parties from eliciting, or the counsel from eliciting testimony from Donald as to where that money went. I've talked briefly about the withdrawals from Donald's retirement accounts during the pendency of these proceedings. Again, that matter was addressed in a temporary order. Essentially, there were bills that were supposed to be paid that were not. In an effort to pay those expenses, the parties agreed that Donald would withdraw certain funds from his retirement account to pay those off. There was also an order entered that the excess funds, about $7,000 that were withdrawn from those accounts, would be deposited into a trust account and reserved for final allocation for final trial. The court directed Mary to file a notice of dissipation. Clearly, the court did not want to address any issues of contempt or any sanctionable behavior by Donald. And let's get back to some of the relief that you want this court to grant you. So one, we've dealt with the equestrian issue. The second is the dissipation issue. So you believe that a remand is necessary for the court to determine dissipation from the liquidated accounts, or did you actually resolve that issue? No, that issue was not resolved. I do believe, Your Honor, that a remand is necessary for the court to... I think Mary has proven her case, and so at this point, the burden should shift to Donald to demonstrate what he expects those additional withdrawals on. And if he cannot, then Mary should be awarded an equitable portion of the unexplained expenditures. Okay, the only reason I asked about whether that matter had been resolved is the court made some comment about, well, that's in your financials, I can read. That wasn't related to the dissipation? That was related to the... Well, so actually, I think the court made that comment on two occasions. Once it was in regards to the demonstrative exhibits that Mary prepared regarding the dissipation. Right, that's what I was thinking. But still, even with that comment, you don't know where the money went because he shifted the burden, is your argument. Right, well, the court failed to shift the burden at that point. But you feel you made a prima facie case, and then it should have shifted, and he wouldn't allow... He basically said you didn't make a prima facie case because he didn't allow the shifting. Correct, correct. And the basis for the court saying the prima facie case was not met was, one, that bank accounts can't... ...can't be liquidated, and two, that... Go ahead and finish that thought. And two, that Mary could not show upon what Donald had spent those funds, and so she hadn't proven her prima facie case. Okay, you'll have some time after Mr. Meinders. Mr. Meinders, what do you have to say? Thank you, Your Honor. Justices, counsel, may I please have the court? My name is Blake Meinders. I represent Donald Hamilton in this matter. If it's all right with the court, I would like to start with our two appeals and then address counsels. That's up to you. Okay, thank you, Judge. So our first contention with the trial court's ruling is the award of permanent maintenance. We think permanent maintenance is excessive in this case. We think that of the 14 factors, the trial court looked at two. One, the length of the marriage, and two, the economic stature of the parties. The economic stature of the parties I think is problematic for a couple different reasons, and I think it goes to one of the factors that wasn't considered by the court, and that's the standard of living at the time of the relationship, of the marriage. In the last couple of years of this long case, Don got a new job. He is a sales rep for Goodman. Initially there is a, he's at a salaried commission rate. Well, the commission rate is high for his first year. It's what I would equate to a signing bonus. That commission rate drops as his territory increases. So his salary will go down at a level out of a certain point, and then his commission rate will continue to drop as his area increases. Well, we tell a lot of people that are in that similar circumstance that the time to argue that is when it happens rather than anticipate something that may or may not happen. Well, and that's part of our argument, too, Your Honor, is that there should have been a set time. If anything, there should have been. And I guess I should have finished my thought, which is you always have the opportunity to bring it before the court if there is such a substantial change in circumstance. Correct? Absolutely, and then there are pending motions as we speak. But what I would say to that is I would argue that the trial court should have planned and made arrangements for that as the key jurisdiction in this case. I would have liked to have seen a, especially since Mary has recently got a job similar to what she had during the relationship in the last couple of years making fairly good money, that the trial court review that, that order for permanent maintenance, that it be reviewable in four years, five years, and that Mary should show a need for that continued maintenance. Where's the authority for that? I mean, that's why we have the ability to always bring these new matters to the court. Nothing is set in stone that's, you know, unreviewable. Well, and that's true. I just think in this situation. Where's the authority for your recommendation? Well, I would say that the award of a permanent maintenance is a strong result, especially in a case like this. So you don't think there should have been an award period of permanent maintenance? Correct. Is that your position? Yes. And I think based on the factors, the judge considered two of the 14. I think the income disparity is not that much, and it will close as time goes on. The needs of the party, Mary is, well, during this case, the trial court allowed a 50-50 split of property in this case with the option of Mary to buy out what we're calling a marital home, which is 216 Polk. She has done that. So I would say her needs, she has a home. She has the same home that she had during the marriage. She has a job. She has the same job that she had in the beginning of the marriage. Her needs are met without Don's contribution. The realistic and future earning capacity, she is a grant writer for Lutheran schools. I think she has complete upward mobility as far as that's concerned, as discussed, Don's earning potential. The time necessary to enable her to acquire opportunities, educational training and employment, she doesn't need that. She started that before this case was final. Her standard of living is the same. The duration of the marriage was long, but they had been separated for eight years now. So I believe that that was too much emphasis was placed on that, and I believe that was an error by the trial court. Also, there was an error in the trial court in attributing half of the educational expenses for Lutheran private schools to Mr. Hamilton. Mary made a unilateral decision before a final parenting agreement or anything of that nature was in place. She made a unilateral decision to send her daughter to Lutheran schools because that's where she worked and it was more convenient for her. There's no direct evidence that the curriculum in Lutheran schools is that much better than at Redbud Public Schools, which she would have attended, which she did attend later. Not only that, at the time, the parties were not making a substantial income. If you put their incomes together, you're talking about a fourth of their, about 25% of their year income to tuition at Lutheran schools. I believe that's exorbitant and not reasonable that she would send a child there. So I don't understand. At the time of the hearing, which hearing? As of the time of the judgment, was the child attending Lutheran schools? No, she was at Redbud. So she, this is a back allocation of expenses? I believe this is, definitely in sophomore year, I believe freshman and sophomore year, and then she came in, or she might have gone to Redbud freshman year. So how much are you talking about here that was allocated to your client? Half of the $25,000 would change. $25,000? Yes. So we believe that that was improperly allocated to Don on several factors. One, it was a unilateral decision before apparel agreement. And two, that the curriculum is not above and beyond what Redbud would be. I mean, high school curriculum is fairly standardized, and she wasn't in any special programs that I know of. So those are our two points of contention that we would ask to be reversed, that the trial court made. As far as counsel's arguments, I will start with the dispensation. The dispensation? Sorry. My apologies. The alleged, yes, I know what I'm talking about. Mary filed a, or tried to file a spreadsheet that we objected to as lack of foundation. Basically, it was what she believed was dissipated, and then there was a column for Don and Mary. And she was arbitrarily sticking funds into a Don and Mary spreadsheet. I think there was certainly a lack of foundation for that evidence, and I think the court saw it that way and did not allow testimony in regards to that. Not only that, Don continued to pay mortgage payments, utility payments, taxes for the home. How is that relevant? I mean, even if he pays that, if he has $100,000 and he goes out and spends it on a mistress, for example, how is his payment of the mortgage relevant to that $100,000 that's dissipated? Well, and this is part of our argument, is that not only on the dissipated funds, but on the evaluation of the marital debt and the $14,000, I believe Mary is double-dipping into all those three. She's classifying funds in each of those three categories.  Sorry? Which three categories? The claim of the $60,000 in debt that was not assigned, the claim of the $160,000, and then the claim of the $14,000. Those are all interconnected. The $60,000 that was not assigned? Yes. Mr. Meinders, was your firm involved at the trial of this case? Yes. Okay. What do you think about Judge, was it Doyle? Yes. It seems like he made several objections for your client. There were a lot where he interposed objections. I think it's the trial court's prerogative to, if they see an issue that's necessary, to raise that issue. I think it's the trial court's prerogative on that. Do you think it's relevant for the trial court to say, why are you bringing that up? As far as, I don't know which. Well, I mean, there's one on the dissipation, obviously, but there are several referenced in the brief, and I printed some of those where he wouldn't let her testify, for example, as to the value of the home using comparable. He raised objections for you and your client. I found that interesting. I would think that's within the trial court's prerogative. I also think that there was a lot of circular arguments going back here. We would address one thing, and then counsel would readdress it. It was a long case. I think that in order to help this case move forward, the trial court was trying to streamline. It appeared. Yes. I wouldn't say necessarily streamline. I would just say try to move this case forward as it had been going on for quite some time. Well, there was a lot of evidence that was streamlined out of it, I guess you might say. Well, and I think if you look at some of the exhibits, for example, the alleged $60,000 that was not accounted for, in that $60,000 there's attorneys fees which were addressed. There's school tuition which was addressed. There's joint tax returns which were addressed. I want to ask you something about the school tuition. Didn't the child always go to private schools? Well, she was homeschooled for a period of time. For two grades, I think. And apart from that. I believe that may have been in grade school. I'm not. Okay. But apart from that, they were in private school, right? I believe there was a short period of time where she was in private school. Then they were, she was homeschooled. And then the high school is what the $25,000 is in relation to as far as the high school tuition. Which the two other sons, well, stepson and other son, went to that high school as well. So we all think that there's a divergence in curriculum that would necessitate her to go to different schools. But as far as, for example, as far as some of these, the money that Mary alleged has been spent is, part of that was the tuition she was asking for that were denied. Part of that was school tuition. Joint property taxes which have been paid. The properties at the conclusion of this trial were framed clear of mortgages, and now are framed clear of taxes since the sale of the marital home which Mary has bought Don's portion on. And that brings us to the evaluation of the property. I don't think it's necessarily necessary for the trial court to make a definite determination on the value of real estate as the market would dictate what the real estate is worth. He made no evaluation, correct? He made no evaluation as far as. He refused to accept any evaluation, right? There was testimony as to the approximate prices, and I think there was some tax records that were submitted from a couple of years prior. But I would say that the market fluctuates quite a bit. And the home was sold in 2018, and I think the market would dictate the sale price or the price of the property at that time. But courts don't wait for the sale. There's methods for valuation for purposes of allocating marital property. Correct. But it seems like the court here just streamlined that out. Well, I think it was an equitable distribution. How can it be equitable distribution if you don't consider it? Well, it was a 50-50 split. I think the percentage is equitable. I mean, it could have been 70-30, it could have been 60-40. In this case, it was 50-50. I think that's within the court's prerogative to distribute property. Let me ask you this about dissipation. Do you believe that the court shifted the burden inappropriately to your client? I'm sorry. The burden was on the plaintiff, but it should have been on your client? I believe she has to show a prima facie case, and I believe they did not do that. Well, the fact that your client didn't deposit the funds into your counsel, so the trust account? Yes. The missing money, you don't think that raises a prima facie case? That specifically was the $14,003.11 since that was used to pay property taxes and mortgage. So your client just disregarded that order and paid something else, and you said it was used to pay the mortgage. That's in the record. I don't know if there's a specific receipt in there. Go ahead. No, no. Answer the question that was asked. That's what you get to do when time runs out. We have things to do. I'm sorry. The question was, is there evidence in the record that that missing $7,000 was used to pay for mortgage expenses and things of that nature? As the record is extensive, I don't know if there's a specific receipt. Was there any testimony, any evidence? I believe there is testimony about that, and that was also ordered to bring the mortgage current and taxes current, which were current, according to the court, as he was not sanctioned for any of that. Okay. That didn't answer my question, but we're out of time for you.  Thank you for your arguments. Thank you, Your Honor. Do you have some comments? Just a few, Your Honor. Okay. To answer your question that you just asked, there was no evidence presented regarding what that $7,000 was spent upon. Okay. It was a missing $7,000 out of the trust account. Correct. Okay. In regards to some of the comments made by counsel, the trial court was not streamlining evidence. The court prevented evidence from being presented for the first time on issues being addressed for the first time. Counsel also stated that the demonstrative exhibits prepared and presented by Mary in regards to the dissipation claim were precluded from being testified to or in support of because of a lack of foundation. However, those exhibits were then entered into evidence. Yeah, I saw the exhibits were entered without objection. Correct. In regards to the arguments about maintenance, I just wanted to correct a couple of things that counsel said. Mary had been a homemaker up until 2014. I think she worked some part-time jobs at the very beginning of the marriage, but the parties had come to an agreement that she would stay at home with the children while Donald worked. She didn't obtain employment until well after the parties had been separated. She had a very difficult time even finding employment, but eventually did in 2014. And she testified specifically that there was no upward mobility in her job. What she was making at that point was the most that she would ever be able to make there. And there is substantial testimony, and that is included in our response brief, regarding Donald's superior income. And also just to address the former marital residence, the real estate that Mary did obtain a mortgage to buy out Donald's share in order to save the house from being foreclosed upon for failure to pay property taxes. Donald was ordered to do that but did not do that. So Mary did obtain a mortgage, satisfied those taxes, and did buy out Donald's share. But she now has a mortgage that she's also paying on that house in addition to all the other expenses. As far as the private school tuition, there was no objection made by Donald during the proceedings to the minor child going to private school, which she had been for a majority of the proceedings. I was correct in that there were only two grades in which the minor child was homeschooled. She went to private school for the majority of her academic tenure at that point. Aside from those two years, she never went to public school. And as far as the sole decision-making, there was never a proposed parenting plan or anything presented by Donald in the proceedings. And because of that, because Mary had been the only one to file a proposed parenting plan or even make any requests as far as allocation of parental responsibilities and parenting time, the court did allocate Mary any sole decision-making in regards to the minor child. As far as the evidence regarding the marital real estate, the property tax records that Mary presented at trial were from 2015. That hearing took place in 2016. So those were current tax records showing the value of the real estate, which was almost exactly in line with what Donald testified to. He said the range of the value of the two properties was between $180,000 and $200,000. The 2015 property tax record said that both properties were estimated at about $175,000. And her presenting the tax records also corroborated the outstanding debt on the property with what Donald testified to. And all of those records were, again, embedded into evidence. So there was reliable evidence presented as to the value of the house and the other real estate. One of the biggest issues here is that the court did fail to assign over $60,000 in marital debt. The biggest issue with that is that a lot of that debt was taken out in Mary's name, and a lot of it was related to the minor child. Because of the court's division of that debt, Mary ended up essentially being responsible for almost 80% of the marital debt, even though at the point that this was her, the final hearing date, Donald's net income was over $7,000. He earned more than double what Mary earned and had a much better ability to pay off some of these debts. Thank you. Okay. Thank you for your arguments. This matter will be taken under advisement and an order will issue. Of course. Thank you.